1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10   SUZANNE ALAEI, individually and on      )   Case No. 15-cv-2959-JAH (BGS)
     behalf of all others similarly situated, )
11                                            )   ORDER GRANTING DEFENDANTS'
                              Plaintiff,      )   MOTION TO DISMISS
12   v.                                       )   PLAINTIFF'S FIRST AMENDED
                                              )   COMPLAINT
13   ROCKSTAR, INC. and ROCKSTAR              )   (DOC. NO. 6)
     BEVERAGE CORPORATION,                    )
14                                            )
15                            Defendants.     )
                                              )
16   _____     )

17                                 **INTRODUCTION**

18          Pending before the Court is the motion to dismiss and/or strike Plaintiff Suzanne

19   Alaei's ("Plaintiff") first amended complaint filed by Defendants Rockstar, Inc. and

20   Rockstar Beverage Corporation (collectively "Defendants"). (See Doc. No. 6). The motion

21   has been fully briefed.  After careful consideration of the pleadings, and for the reasons set

22   forth below, the Court **GRANTS** Defendants' motion to dismiss.

23                                  **BACKGROUND**

24          Defendants are Nevada corporations that manufacture, distribute, and sell energy

25   drinks under the brand name Rockstar. (Doc. No. 4, ¶¶ 7, 8). Plaintiff is a consumer who

26   purchased at least one of Defendants' energy drinks. Id. ¶¶ 6, 19. Specifically, on

27   November 19, 2015, Plaintiff entered the CVS Pharmacy located at 1101 S. Mission Road

28   in Fallbrook, California, and purchased a Rockstar Sugar Free energy drink for $2.20. Id.

15cv2959

¶¶ 19, 20.  The phrase "Made In The USA" and an image of the United States were displayed on the beverage's can. Id. ¶ 19. Plaintiff contends that she  relied upon that advertising in deciding to purchase the drink, and, had she been aware that the drink was not "Made In The USA," she would have not purchased it. Id. ¶ 21. Plaintiff alleges that Defendants' products, including the product she purchased, contain various amounts of taurine, guarana seed extract, and milk thistle extract that are not made in the United States. Id. ¶ 27. Therefore, on December 31, 2015, Plaintiff filed a putative class action suit against Defendants based on their use of the words "Made In The USA" on the beverage that she purchased and on Defendants' other beverages. (See Doc. No. 1).

On January 19, 2016, Plaintiff filed the operative first amended complaint ("FAC"). (See Doc. No. 4). In the FAC, Plaintiff asserts claims for: (1) violation of section 17533.7 of the California Business & Professions Code; (2) violation of California's Unfair Competition Law, California Business & Professions Code §§ 17200 et seq. ("UCL"); and (3) violation of the California Consumer Legal Remedies Act, California Civil Code §§ 1750 et seq.  ("CLRA"). Id. at 14–22[1]. On March 21, 2016, Defendants filed a motion to dismiss and/or strike Plaintiff's FAC, arguing that Plaintiff fails to allege a violation of any law under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, lacks standing to sue over products that Plaintiff  never purchased, and lacks standing to sue for injunctive and declaratory relief. (See Doc. No. 6). On April 25, 2016, Plaintiff filed an opposition to the motion to dismiss and/or strike and an objection to various statements in Defendants' motion. (See Docs. No. 7, 8). On May 2, 2016, Defendants filed a reply brief, and the Court took Defendants' motion to dismiss and/or strike under submission pursuant to Civil Local Rule 7.1(d.1). (See Docs. No. 9, 10). Two days later, Plaintiff filed yet another objection to various statements posited in Defendants' reply brief.[2] (See Doc.

---

[1]Page numbers cited refer to the page numbers assigned by the Court's Electronic Filing System.

[2]Plaintiff objects to Defendants' statement that Plaintiff rushed to file the instant suit on the day before the current version of section 17533.7 took effect and references to a similar action filed by Plaintiff against Heinz as irrelevant and improper. (See Doc.

No. 11).  Finally, on September 13, 2016, Defendants filed a notice of supplemental authority.  (See Doc. No. 12).

**LEGAL STANDARD**

**I.    12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory.  Li v. Kerry, 710 F.3d 995, 999 (9th Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (citing  Iqbal, 556 U.S. at 678).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), a court must assume the truth of all factual allegations and construe the factual allegations in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38

---

No. 8).  Plaintiff also objects to Defendants' discussion of section 17533.7's legislative history in its reply brief as improper and untimely. (See Doc. No. 11).  The Court finds Plaintiff's objections frivolous and overrules them as such. The Heinz case is not irrelevant as Plaintiff contends; rather, it is persuasive authority because it is an opinion issued by a district court in this district analyzing issues similar to those at play in this action. See Alaei v. H.J. Heinz Co. et al., Case No. 3:15-cv-2961, Doc. No. 22) (S.D. Cal. Apr. 22, 2016).  Further, the Court has not taken into account Defendants' characterization of Plaintiff as "anxious" and rushing to file suits against Heinz and Defendants. Finally, the Court decides this motion without relying on section 17533.7's legislative history notes. Therefore, Plaintiff's objections are overruled.

3

(9th Cir. 1996).  However, legal conclusions need not be taken as true merely because they are "cast in the form of factual allegations." Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557).  The court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice.  Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts.  Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).

## II.   9(b)

Under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Under Ninth Circuit case law, Rule 9(b) imposes two distinct requirements on complaints alleging fraud.  First, the basic notice requirements of Rule 9(b) require complaints pleading fraud to "state precisely the time, place, and nature of the misleading statements, misrepresentations, and specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994); see also Vess v. Ciba-Geigy Corp., U.S.A., 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted) (stating that a plaintiff must set forth "the who, what, when, where and how" of the alleged misconduct).  Second, Rule 9(b) requires that the complaint "set forth an explanation as to why the statement or omission complained of was false or misleading." Yourish v. California Amplifier, 191 F.3d 983, 993 (9th Cir. 1999) (citation and quotation omitted).

## DISCUSSION

### I.   Violation of California Business & Professions Code Section 17533.7

#### A.   The Amended Version of Section 17533.7 Applies

Central to this action is section 17533.7 of the California Business and Professions

4

Code, which is also known as California's "Made in U.S.A." statute. Prior to January 1, 2016, section 17533.7 provided:

> It is unlawful for any person, firm, corporation or association to sell or offer for sale in this State any merchandise on which merchandise or on its container there appears the words "Made in U.S.A.," "Made in America," "U.S.A.," or similar words when the merchandise or any article, unit, or part thereof, has been entirely or substantially made, manufactured, or produced outside of the United States.

CAL. BUS & PROF. CODE § 17533.7 (2015). However, the California Legislature amended section 17533.7 by adding subsections (b) through (e), which became effective on January 1, 2016. In relevant part, the new subsections limit the applicability of section 17533.7's prohibition on domestic origin labels and allow a product to advertise that it was made in America so long as its foreign-sourced ingredients comprise less that a certain percentage of the product's total ingredients. Specifically, the amendments to section 17533.7 read:

> (b) This section shall not apply to merchandise made, manufactured, or produced in the United States that has one or more articles, units, or parts from outside of the United States, if all of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 5 percent of the final wholesale value of the manufactured product.
>
> (c)(1) This section shall not apply to merchandise made, manufactured, or produced in the United States that has one or more articles, units, or parts from outside of the United States, if both of the following apply:
>
> (A) The manufacturer of the merchandise shows that it can neither produce the article, unit, or part within the United States nor obtain the article, unit, or part of the merchandise from a domestic source.
>
> (B) All of the articles, units, or parts of the merchandise obtained from outside the United States constitute not more than 10 percent of the final wholesale value of the manufactured product.
>
> (d) This section shall not apply to merchandise sold for resale to consumers outside of California.
>
> (e) For purposes of this section, merchandise sold or offered for sale outside of California shall not be deemed mislabeled if the label conforms to the law of the forum state or country within which they are sold or offered for sale.

15cv2959

CAL. BUS. & PROF. CODE § 17533.7 (b–e) (2016).[3]  With this amendment in effect, California law no longer strictly prohibits domestic origin labels on products containing any foreign ingredient, but instead allows products with limited amounts of foreign-sourced ingredients to still advertise that the product was made in the United States.

Defendants contend that the current, amended language of section 17533.7 controls in this action because the amended statute does not contain a savings clause and "an action wholly dependent on statute abates if the statute is repealed without a saving clause . . . ." (Doc. No. 6-1, pg. 4 (citing Younger v. Superior Court, 21 Cal. 3d 102, 109 (1978)). Plaintiff argues that the former, unamended version of section 17533.7 applies to her claim because: (1) there is a presumption against retroactive application of statutes, (2) Plaintiff filed her initial complaint before the amended version of section 17533.7 became effective, (3) Defendants fail to provide authority demonstrating that the California Legislature intended for the amended statute to apply retroactively, and (4) the harm to Plaintiff and the proposed class occurred before the effective date of the amended section 17533.7. (Doc. No. 7, pg. 15–21).

Because Plaintiff's claims arise under California law, this Court applies the law as it believes the California Supreme Court would apply it. See Gravquick A/S v. Trimble Navigation Int'l Ltd., 323 F.3d 1219, 1222 (9th Cir. 2003). California courts generally construe statutes to operate prospectively unless the legislature clearly intends the statute to apply retrospectively. Tapia v. Superior Court, 53 Cal. 3d 282, 287 (1991); Governing Bd. v. Mann, 18 Cal. 3d 819, 829 (1977). However, "courts correlatively hold under the common law that when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, 'a repeal of such a statute without a saving clause will terminate all pending actions based thereon.'" Mann, 18 Cal. 3d at 829 (citing S. Serv. Co., Ltd. v. Los Angeles Cnty., 15 Cal. 2d 1, 11–12 (1940)); see also Younger v. Superior Court, 21 Cal. 3d 102, 109 (1978) (noting "the well settled rule that an action wholly

[3] Subsection (a) of section 17533.7 remains nearly identical. Compare CAL. BUS. & PROF. CODE § 17533.7(a) (2015) with CAL. BUS. & PROF. CODE § 17533.7(a) (2016).

dependent on statute abates if the statute is repealed without a saving clause before the judgment is final").  "In other words, where 'the Legislature has conferred a remedy and withdraws it by amendment or repeal of the remedial statute, the new statutory scheme may be applied to pending actions without triggering retrospectivity concerns.'" <u>Zipperer v. Cnty. of Santa Clara</u>, 133 Cal. App. 4th 1013, 1023 (Cal. Ct. App. 2005) (citing <u>Brenton v. Metabolife Int'l, Inc.</u>, 116 Cal. App. 4th 679, 690 (Cal. Ct. App. 2004)).[4] "The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time." <u>Mann</u>, 18 Cal. 3d at 829 (citing <u>Callet v. Alioto</u>, 210 Cal. 65, 67–68 (1930)).

The <u>Zipperer</u> court set forth four factors that courts should consider when determining whether a cause of action is extinguished by new statutory language. <u>See Zipperer</u>,133 Cal. App. 4th at 1023. These factors are: (1) the statutory nature of the plaintiff's claim, (2) the unvested nature of the plaintiff's claimed rights, (3) the timing of the elimination of those rights, (4) and the nature of the mechanism by which the right of action was eliminated. <u>Id.</u>  Applying this framework to the facts before this Court, it is clear that the current, amended version of section 17533.7 applies to Plaintiff's claims.

First, Plaintiff's claim under section 17533.7 is statutory in nature as Plaintiff "'possessed no right or remedy . . . which existed apart from the statute itself.'" <u>Zipperer</u>, 133 Cal. App. 4th at 1024 (citing <u>S. Serv. Co., Ltd. v. Los Angeles Cnty.</u>, 15 Cal. 2d 1, 11 (1940)); <u>see also</u> <u>Fitzpatrick v. Tyson Foods, Inc.</u>, No. 2:16–cv–0058, 2016 WL 5395955, at *4 (E.D. Cal. Sept. 27, 2016)(finding that a claim asserted under section 17533.7 is statutory in nature). Second, Plaintiff's claimed rights were not yet vested when the amended version of section 17533.7 became effective because there has been no final judgment in this action. <u>See</u> <u>Zipperer,</u> 133 Cal. App. 4th at 1024 (citing <u>People v. One 1953 Buick</u>, 57 Cal. 2d 358, 365 (1962) (stating that "[u]ntil it is fully enforced, a

---

[4]This common law principle is codified in section 9606 of the California Government Code, which states that "[a]ny statute may be repealed at any time, except when vested rights would be impaired. Persons acting under any statute act in contemplation of this power of repeal."

statutory remedy is merely an 'inchoate, incomplete, and unperfected' right, which is subject to legislative abolition")). Third, Plaintiff's initial complaint was pending for less than twenty-four hours when the current version of section 17533.7 took effect. Therefore, Plaintiff's claimed rights under the former version of section 17533.7 were eliminated almost instantly as opposed to after months or years of litigation. Fourth, section 17533.7 was altered through amendment, which is a common mechanism used by the legislature to abolish a right of action. See, e.g., Tyson Foods, Inc., 2016 WL 5395955, at *4 (an amendment is a typical mechanism to abolish a right of action); Dep't of Soc. Welfare v. Wingo, 77 Cal. App. 2d 316, 320 (Cal. Ct. App. 1946) ("[T]he repeal of the statute without a saving clause before a judgment becomes final destroys the right of action. The same rule is applied to an amendment of a statute."); see also Brenton v. Metabolife Int'l, Inc., 116 Cal. App. 4th 679, 690 (Cal. Ct. App. 2004) (when a statutory amendment has the effect of withdrawing a statutory remedy, the amended statute may be applied to pending actions).

Further in support of applying the current version of section 17533.7 is the fact that the section's amended language does not  include a savings clause to preserve Plaintiff's claims under the former version of section 17533.7. Additionally, other California district courts have held that the current, amended version of section 17533.7 applies to pending claims alleged under that section. See Tyson Foods, Inc., 2016 WL 5395955, at *3–4; Rossetti v. Stearn's Prods., Inc., CV 16–1875–GW (Ssx), 2016 WL 3277295, at *4 (C.D. Cal. June 6, 2016).  Therefore, the Court finds that the amended version of section 17533.7 applies to Plaintiff's claims alleged thereunder.

### B.   Plaintiff Fails to Properly Allege a Violation of Section 17533.7

Plaintiff's claim for violation of section 17533.7 is "grounded in fraud," therefore Rule 9(b)'s heightened pleading standard applies. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103–04, 1108 (9th Cir. 2003) (applying Rule 9(b) when the allegations in the complaint described fraudulent conduct); In re Sony Gaming Networks & Customer Data Sec. Breach Litig., 903 F. Supp. 2d 942, 967, n. 20 (S.D. Cal. 2012) ("Rule 9(b)'s

heightened pleading standards apply equally to claims for violation of the UCL . . . that are grounded in fraud"). As noted above, under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This requires allegations of fraud to include the "who, what, when, where, and how" of the circumstances giving rise to the claim. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997) (citation omitted).

Here, Plaintiff does not meet Rule 9(b)'s particularity requirements. In the FAC, Plaintiff alleges only that "Defendants' products contain various amounts of taurine, guarana seed extract, and milk thistle extract, which, among other ingredients in Defendants' products, are not from the United States." (Doc. No. 4, ¶ 27). Section 17533.7 prohibits labeling a product as "Made in U.S.A" when a certain percentage of the product's ingredients were made outside of the United States.  Here, Plaintiff fails to specify where the allegedly foreign-sourced ingredients were made and what percentage of Defendants' products are comprised of foreign-sourced ingredients. Therefore, Plaintiff fails to  properly allege that Defendants violated section 17533.7, and  Defendants' motion to dismiss is **GRANTED** as to Count one.

## II.   Plaintiff's Remaining Claims

Plaintiff's remaining two claims are claims for violation of the UCL and CLRA. Defendants assert that these claims should be similarly dismissed. The Court addresses these claims in turn.

First, Defendants argue that Plaintiff's UCL claim fails to the extent that it is premised upon an alleged violation of section 17533.7 because Plaintiff fails to sufficiently allege a violation of section 17533.7. (Doc. No. 6-1, pg. 6–7). Second, Defendants contend that, to the extent that Plaintiff's UCL claim is not premised upon section 17533.7, it fails because Plaintiff fails to allege additional facts establishing that Defendants acted unlawfully, unfairly, or fraudulently, which would be separately actionable under the UCL. Id. Third, Defendants assert that California's safe harbor doctrine, which prevents courts from punishing otherwise permissive activity through the

purview of unfair competition, bars Plaintiff's UCL and CLRA causes of action. Id. at 7–8. In opposition, Plaintiff counters that she sufficiently alleged that Defendants' actions were unfair to establish a claim under the UCL. (Doc. No. 7, pg. 21–25). Plaintiff further argues that the safe harbor doctrine does not safeguard Defendants' fraudulent behavior against her claims. Id. at 25–29. Finally, Plaintiff contends that the authorities cited by Defendants are factually distinguishable from the present case and involve a specific safe harbor which is not applicable in this matter. Id. at 30–31.

## A.   Plaintiff Fails to Properly Allege a Violation of the UCL

Here, the Court finds that Plaintiff fails to sufficiently allege a violation of the UCL. A claim asserted under the UCL is not necessarily deficient even if the alleged unfair practice is not specifically proscribed by another law. See Cel-tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999).   However, this Court concurs with Defendants that California's safe harbor doctrine bars Plaintiff's UCL claims.

The California Supreme Court has explained how the safe harbor doctrine applies to general unfair competition claims:

> Although the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a "safe harbor," plaintiffs may not use the general unfair competition law to assault that harbor.

Id. at 182. As explained herein, the California Legislature amended section 17533.7 and eliminated an absolute ban on the use of domestic origin labels on products containing minimal foreign-sourced ingredients. By amending section 17533.7, the legislature permitted parties to claim that their products are made in the United States, when, in fact, a small amount of the product's ingredients were made outside of the United States. Plaintiff attempts to use the UCL to attack conduct which the legislature has thoughtfully considered and deemed lawful. Therefore, Plaintiff's UCL claim is precisely the kind that California's safe harbor doctrine seeks to preclude.

15cv2959

Plaintiff misstates <u>Cel-Tech Communications</u> by asserting that the case stands for the proposition that a plaintiff "may not use the general unfair competition law to assault that harbor only when specific legislation provides a 'safe harbor' provision." (Doc. No. 7, pg. 30 (citing <u>Cel-tech Commc'ns, Inc.</u>, 20 Cal. 4th at 182)). "[T]his argument . . . ignores the California Supreme Court's counsel that safe harbors exist both if the Legislature has 'permitted certain conduct' and if it has 'considered a situation and concluded that no action should lie.'" <u>Barber v. Nestle USA, I</u>nc., 154 F. Supp. 3d 954, 961 (C.D. Cal. 2015) (citing <u>Cel-tech Commc'ns, Inc.</u>, 20 Cal. 4th at 182). As noted above, the language of section 17533.7 demonstrates that the legislature considered the use of domestic origin labels on products containing small amounts of foreign-sourced ingredients and concluded that section 17533.7 is not applicable to those products—or that no action should lie. Plaintiff's complaint is otherwise bereft of any facts to suggest that there is an actionable claim under the current version of section 17533.7. Therefore, the safe harbor doctrine applies and bars Plaintiff's UCL claim.   Furthermore, Plaintiff fails to set forth additional allegations to support an independently actionable claim under the UCL. Accordingly, Defendants' motion to dismiss is **GRANTED** as to Count Two.

### B.   Plaintiff Fails to Properly Assert a Claim under the CLRA

Plaintiff's third and final claim for violation of the CLRA is also deficient. The safe harbor rule applies to claims brought under the CLRA. <u>See</u> <u>Lopez v. Nissan N. Am., Inc.</u>, 201 Cal. App. 4th 572, 594 (Cal. Ct. App. 2011)("Like UCL claims, claims under the CLRA may be barred under the 'safe harbor' doctrine."); <u>see also</u> <u>Alvarez v. Chevron Corp.</u>, 656 F.3d 925, 934 (9th Cir. 2011); <u>Barber v. Nestle USA, Inc.</u>, 154 F. Supp. 3d 954, 961–62 (C.D. Cal. 2015) (holding that the safe harbor doctrine barred UCL and CLRA claims for inadequate disclosure because the California Legislature required only limited disclosures).

Plaintiff alleges that Defendants violated the CLRA by "marketing and representing that its products are 'Made In The USA' (or some derivative thereof) when they actually contain foreign-made or manufactured ingredients." (Doc. No. 4, ¶ 78). However, by

amending section 17533.7, the legislature allowed parties to claim that their products are created in the United States when a small amount of the product was made in a foreign country. Therefore, the safe harbor doctrine similarly applies to and bars Plaintiff's CLRA claim.

Additionally, Plaintiff's CLRA claim must be dismissed for failure to comply with the CLRA's affidavit requirement. <u>See</u> CAL. CIV. CODE § 1780(d) (emphasis added) ("[C]oncurrently with the filing of the complaint, the plaintiff shall file an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action. If a plaintiff *fails to file the affidavit required by this section*, the court shall, upon its own motion or upon motion of any party, *dismiss the action without prejudice*."). Here, Plaintiff acknowledges that she failed to file the requisite venue affidavit. (*See* Doc. No. 7, pg. 32). Accordingly, the Court **GRANTS** Defendants' motion to dismiss as to Count Three.[5]

<u>CONCLUSION AND ORDER</u>

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss Plaintiff's FAC (Doc. No. 6) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**. To the extent that Plaintiff is able to cure the noted deficiencies, Plaintiff may file a second amended complaint within **30 days** of this Order.

**IT IS SO ORDERED.**

Dated:        December 12, 2016

JOHN A. HOUSTON
United States District Judge

_____

[5]Because this Court dismisses Plaintiff's FAC for failure to state a claim, the Court declines to address Defendants' additional arguments.

15cv2959